CITY OF BREVARD, A MUNICIPAL CORPORATION, AND L. C. CASE, BUILDING INSPECTOR OF THE CITY OF BREVARD v. JOHN F. RITTER, FRANKIE M. WAGONER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF LEWIS MOORE, LOIS ROBINSON, FERRELL MOORE, EUNA ANN CANTRELL AND CHARLES MORGAN COMPANY, A CORPORATION

No. 7329SC387

(Filed 9 January 1974)

Contempt of Court § 6; Municipal Corporations § 30; Trial § 6— enlargement of airport facilities — order to remove construction — stipulations showing violation

Where defendants purchased a private airport located in an area zoned for residential use, began construction on an addition to the airport facilities, were permanently restrained from constructing a pilot lounge and clubhouse and auxiliary hangar or extending or enlarging the airport facilities, and were required to remove that portion of construction already completed within 90 days, stipulations by defendants that the portion of the construction was not removed but was altered so as to include bedrooms, a kitchen and bathrooms were sufficient to show that defendants failed to comply with the order of the trial court to remove the offending structure which constituted an extension of the nonconforming use.

APPEAL by plaintiffs from an order of *Ervin, Judge,* entered 31 December 1972 out of term and out of district.

Prior to December 1971, defendant Ritter secured an option to purchase land upon which was located a private airport con-

sisting of a grass or dirt runway approximately 1,000 feet to 2,000 feet long, along with improvements consisting of 3 open hangars and one 12 x 15 metal storage building. One gas tank and one gas pump were purchased from a previous tenant for $600.00. Since 1965, the property, which lies within a one-mile radius of the City of Brevard, has been zoned R-2, Medium Density Residential. Although he purchased the improvements located on the airport premises in December 1971, defendant did not actually buy the land until January 1972.

On 4 August 1971, defendant requested the City of Brevard to rezone the property from R-2, Residential to F-1, Flood Plain. On 18 October 1971, the Board of Aldermen, pursuant to the recommendation of the Brevard Planning and Zoning Board, denied defendant's request. Defendant did not appeal that decision.

In December 1971, before purchasing the property, defendant began construction of a new building on the premises which would include approximately 3,000 square feet. It was intended to be used as a pilot clubhouse and designed to include facilities such as restrooms, chairs, tables and refreshment vending machines and an auxiliary hanger. The projected dimension of the clubhouse was 20 x 42 feet, and that of the auxiliary hangar, 51 x 34 feet, an area sufficient for storing one aircraft. Defendant said the new facilities would be used in conjunction with a flying club he intended to organize.

By the end of December 1971, the clubhouse building foundation and concrete base were completed as were the erection of studs around the perimeter of the building and the positioning of a metal beam support located across the front of said building.

The metal storage building already located on the premises as of December 1971 measured 12 x 15 feet and served as the airport office and headquarters. As such, it contained a desk, a phone, a snack machine and aircraft navigational radio equipment as well as oil, pilot supplies and tie-down equipment.

On 5 January 1972, plaintiff secured a temporary restraining order prohibiting defendant from continuing to construct a clubhouse. The order was secured on the grounds that the building would not be used for a purpose compatible with Sections 50 and 51 of the Brevard Zoning Ordinance and that the construction constituted an impermissible expansion and extension of a prior nonconforming use in violation of Section 70 of the

ordinance. As a result of a hearing on 17 January 1972 before Judge Falls, the restraining order was continued until a final adjudication on the merits. On 21 February 1972, a hearing before Judge Falls was held upon plaintiff's application for a permanent injunction. The Court made the following findings and conclusions, among others:

"Finding of Fact 19 — 'That in December of 1971 the defendant, John F. Ritter, began constructing a new building located upon said premises which was to contain approximately 3,000 square feet, the intended use thereof being a pilot lounge or clubhouse and auxiliary hangar to be used in conjunction with the other facilities located at said airport, and that said building was completely new construction and not connected in any way to any of the existing structures located upon said premises, and said construction could in no way be considered as the repair, rebuilding or alteration of an existing structure, nor could such structure constitute a replacement of any existing structure.'

"Conclusions of Law — '1. That the building presently under construction by the defendant, John F. Ritter, with the assistance of the Charles Morgan Company, is in violation of Sections 50, 51 and 70 of the Brevard Zoning Ordinance, and such construction is unlawful and should be restrained.

"2. That the construction of a pilot lounge or clubhouse and auxiliary hangar constitutes an enlargement and extension of the nonconforming use in violation of Section 70 of the Brevard Zoning Ordinance, since no such structure now exists and such construction does not constitute the repair or remodeling of any existing structure.

"3. That the defendant, John F. Ritter, should be enjoined from continuing with the construction or building of the pilot lounge or clubhouse and auxiliary hangar located upon the airport premises, and said defendant should be required to remove the portion or portions of said building which are already completed.' "

Following the findings of fact and conclusions of law, the Court decreed, in part:

"That the defendant, John F. Ritter, and the defendant, Charles Morgan Company, be and they are hereby perma-

nently enjoined and restrained from constructing the pilot lounge and clubhouse and auxiliary hangar or extending or enlarging the airport facilities and said defendant, John F. Ritter, is herein and hereby directed to remove that portion of construction of said pilot lounge or club and auxiliary hangar already completed within 90 days from the date of this judgment."

This Court affirmed Judge Falls' order in a decision reported in *City of Brevard v. Ritter*, 14 N.C. App. 207, 188 S.E. 2d 41. That decision was certified on 8 May 1972.

No work was done on building from January until June 1972. On 22 May 1972, defendant notified plaintiff he was proceeding to convert the partially completed structure into a two-bedroom, single family residence which would be compatible with existing zoning regulations. Prior to giving the above notice, defendant again applied to the Board of Aldermen for F-1 rezoning. No action was taken on the application before construction was recommenced.

Plaintiffs filed a motion in the cause alleging, among other things, that defendant had continued construction after Judge Falls' order of 21 February 1972 and had failed to remove the new construction existing as of the date all as was required by that order. Judge W. E. Anglin signed an order on 26 September 1972 in which Ritter was directed to appear and show cause why he should not be held in contempt. The parties submitted stipulations of facts on 15 December 1972. The case was considered by Judge Ervin on the record in the case and argument of counsel.

Among the stipulations were the following:

"6. . . . . — 'That in December of 1971 the defendant, John F. Ritter, began constructing a new building located upon said premises which was to contain approximately 3,000 square feet, the intended use thereof being a pilot lounge or clubhouse and auxiliary hangar to be used in conjunction with the other facilities located at said airport, and that said building was completely new construction and not connected in any way to any of the existing structures located upon said premises, and said construction could in no way be considered as the repair, rebuilding or alteration of an existing structure, nor could such structure constitute a replacement of any existing structure.'

\* \* \*

"9. *That the defendant, John F. Ritter, has not re-moved that portion of the construction of his building as it existed on February 23, 1972.* (Emphasis added.)

"10. That the construction of said *building was con-tinued by the defendant,* John F. Ritter, commencing dur-ing the month of June 1972; that the defendant Ritter at said time made certain alterations to the existing construc-tion by building two bedrooms, a kitchen, and by making certain alterations to the bathroom areas as shown on defendant's Exhibit 1, attached hereto. (Emphasis added.)

"11. That the defendant, John F. Ritter, and his family have spent the night in said building on occasions when they were in Brevard, North Carolina.

'That on or about October 11, 1972, when the attorneys for the parties made an inspection of the structure, the same had various furnishings located therein including various tables, chairs, lamps, TV set, a bed, a day bed, stove, refrigerator, telephone, all located at various places within the living-dining room, kitchen, bedrooms and baths.'

\* \* \*

"13. That on or by the 11th day of September 1972, with the exception of the finishing of the rectangular space marked as 'Recreation' on Exhibit C (51 feet by 34 feet) (and marked garage and hobby shop, plus bedroom and closet and powder room, as shown on defendant's Exhibit 1), the defendant, John F. Ritter, had substantially com-pleted the building which he was then constructing and the sides thereof had been painted and Exhibit F attached hereto is a fair and accurate representation of said build-ing as it appeared on the 11th day of September 1972."

On 31 December 1972, Judge Ervin signed an order which denied plaintiff's motion in the cause and contained, in perti-nent part, the following:

\* \* \*

"And after consideration of the court's file, and the facts stipulated between the parties, and after hearing argument of counsel as to the facts and the law, it appeared to the court and the court finds that the plaintiff has failed to carry the burden of proving that the defendant, John F.

Ritter, has violated the provisions of the judgment of the Honorable B. T. Falls dated February 23, 1972, nor the subsequent opinion of the Court of Appeals of North Carolina, and the plaintiff has failed to prove that the structure completed by the defendant is in violation of the court order."

*Morris, Golding, Blue & Phillips by James N. Golding for plaintiff appellants.*

*Van Winkle, Buck, Wall, Starnes and Hyde, P.A. by O. E. Starnes, Jr., and Roy W. Davis, Jr., for defendant appellee.*

VAUGHN, Judge.

Subsequently affirmed by this Court, the order of Judge Falls, required, among other things, defendants to "remove that portion of construction . . . already completed" within 90 days. Defendants were permanently restrained "from constructing the pilot lounge and clubhouse and auxiliary hangar or extending or enlarging the airport facilities." It appears to us that when Judge Falls uses the words "pilot lounge and clubhouse and auxiliary hangar" he was simply adopting the language of the parties to describe the *offending structures* which then and now constitute an extension of the nonconforming use. The stipulations are sufficient to show that defendants have failed to comply with the order, despite the fact that they may have changed the name of the offending structures.

The question of compliance or noncompliance with the explicit letter and intent of the order as entered was the essential question presented for resolution at the hearing. The order of 31 December 1972 is reversed and vacated and the cause is remanded for proceedings to assure compliance with the order of Judge Falls entered 23 February 1972.

Reversed and vacated.

Chief Judge BROCK and Judge HEDRICK concur.