CITY OF BREVARD, A MUNICIPAL CORPORATION, AND L. C. CASE, BUILDING INSPECTOR OF THE CITY OF BREVARD v. JOHN F. RITTER, FRANKIE M. WAGONER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF LEWIS MOORE, LOIS ROBINSON, FERRELL MOORE, EUNA ANN CANTRELL AND CHARLES MORGAN COMPANY, A CORPORATION

No. 77

(Filed 1 July 1974)

**Contempt of Court § 6; Municipal Corporations § 30— order to remove building — contempt proceeding — burden of proof**

Where defendant was enjoined from enlarging a private airport facility in violation of a city zoning ordinance and was ordered to remove a partially constructed auxiliary hangar, and it was stipulated that defendant notified the zoning board that he was proceeding to convert the partially completed hangar into a two-bedroom dwelling, the trial court in a hearing to show cause why defendant should not be attached as for contempt in failing to comply with the order to remove the building erred in placing the burden on the city to show

City of Brevard v. Ritter

that defendant had violated the court's order since defendant had the burden of purging himself of the charge of contempt by showing that he had complied with the court's mandate that he remove the offending structure.

Justice SHARP concurring in result.

Chief Justice BOBBITT and Justice BRANCH join in the concurring opinion.

ON *certiorari* to the North Carolina Court of Appeals to review its decision filed January 9, 1974 (20 N.C. App. 380, 201 S.E. 2d 534) reversing and vacating the order entered in the Superior Court of TRANSYLVANIA County on December 31, 1972, dismissing a contempt proceeding against the defendant.

The judicial history of this case had its genesis in an action instituted in the Superior Court of Transylvania County by the City of Brevard against John F. Ritter and others praying for temporary and permanent restraining orders to prevent defendant Ritter from completing construction of a building which violated the city's zoning ordinances.

The proceeding came on for hearing before *Judge Falls* on February 21, 1972. The parties stipulated that the defendant Ritter purchased a tract of land on which were located facilities for a private airport with a grass and dirt runway 1000 to 2000 feet in length. At the time of the purchase, the property was within a one mile radius of the city limits of Brevard and subject to the city's zoning regulations. The airport facilities consisted of three open air hangars and a metal storage building 12 x 15 feet "used as an office and headquarters for the airport." The area was zoned R-2, Medium Density Residential District. Ritter had requested that the area be rezoned from R-2 Residential to F-1 Flood Plain. His request was denied.

At the hearing before Judge Falls, the parties entered into stipulations recorded in sixteen separately numbered paragraphs. Among them the following are pertinent to the inquiry:

"6. That in December 1971, the defendant, John F. Ritter, began constructing a new building which was to take approximately three thousand square feet, which upon completion was to be used as a pilot clubhouse containing such facilities as restrooms, chairs, tables, and food and drink dispensing machines, etc.; that the clubhouse of the building will have dimensions of approximately 20 x 42 feet,

serving as a lounge and recreation area as described above. That immediately adjoining the club or lounge area, and as a part of the same building, will be an area approximately 51 x 34 feet which is also subject for use in extended social activity or recreation, and which will be of sufficient size to permit the storage of one small aircraft.

"8. That said new building is not connected with any of the prior existing buildings and upon completion was to be completely separate and apart from any other existing improvements located upon said premises.

"10. That the Brevard High School, Athletic Field and bus maintenance garage are adjoining the airport located to the southwest of the airport runway and there are two large apartment complexes located to the northwest of the airport runway, one containing 20 units and the other containing 50 units and there is under construction a new medical clinic to the side of and within approximately three hundred feet of the airport premises situated to the northwest.

"11. That by letter dated August 4, 1971, marked as Exhibit 7, the defendant, John F. Ritter, requested the City of Brevard to rezone the airport premises from a R-2 Residential zone to a F-1 Flood Plain zone; that said defendant with such request submitted a map marked as Exhibit 8 depicting said airport property and airport runway.

"12. That at a regularly scheduled meeting of the Board of Aldermen for the City of Brevard on October 18, 1971, the defendant's zoning request was considered; the Board of Aldermen for the City of Brevard accepted the recommendation of the Brevard Planning and Zoning Board which was to deny said zoning request.

"14. That the defendant, John F. Ritter testified that he intended to organize a Flying Club, and that a portion of the building under construction would be usable as a hangar for a small airplane."

Upon the basis of the stipulations, Judge Falls found the proposed structure was unlawful, in violation of the zoning ordinances, and entered judgment permanently restraining the defendant Ritter and Charles Morgan Company (Ritter's construction contractor) from constructing the pilot lounge and

clubhouse and auxiliary hangar or extending or enlarging the airport facilities and directing Ritter to remove within ninety days the portion already completed.

The defendant Ritter appealed to the North Carolina Court of Appeals. On April 26, 1972, the Court of Appeals affirmed the judgment entered by Judge Falls. The decision is reported in 14 N.C. App. 207, 188 S.E. 2d 41.

Prior to May 22, 1972, the defendant Ritter again applied to the Zoning Board for a change from the R-2 Medium Density Residential District to F-1. Having received no reply, on that day he notified the Zoning Board in writing that he was proceeding to convert the partially completed structure into a two-bedroom single family residence. The City Board by motion in the cause, based upon affidavit and notice, obtained from Judge Anglin an order commanding the defendant Ritter to appear and show cause, if any he has, why he should not be adjudged in contempt for failure to comply with Judge Falls' order to remove the offending structure.

The show cause order was made returnable before Judge Ervin, who on December 31, 1972, entered the following order:

> "And after consideration of the court's file, and the facts stipulated between the parties, and after hearing argument of counsel as to the facts and the law, it appeared to the Court and the Court finds that the plaintiff has failed to carry the burden of proving that the defendant, John F. Ritter, has violated the provisions of the judgment of the Honorable B. T. Falls dated February 23, 1972, nor the subsequent opinion of the Court of Appeals of North Carolina, and the plaintiff has failed to prove that the structure completed by the defendant is in violation of the court order."

On the plaintiff's appeal, the Court of Appeals concluded that the stipulations in the record disclosed a violation of Judge Falls' order, reversed Judge Ervin's order, and remanded the case to the superior court for further proceedings.

We allowed certiorari to review the decision of the Court of Appeals.

*Morris, Golding, Blue & Phillips by James N. Golding for plaintiff appellee.*

*Van Winkle, Buck, Wall, Starnes, Hyde and Davis, P.A. by E. Starnes, Jr., for defendant appellant.*

HIGGINS, Justice.

In this dispute the City of Brevard has sought to enforce its zoning ordinances preventing the enlargement of the private airport facility owned by the defendant. The defendant sought "to organize a Flying Club, and that a portion of the building under construction would be usable as a hangar for a small airplane." (Stipulation 14.)

After hearing, Judge Falls found the defendant had violated the zoning ordinances by the new construction and by enlargement of existing facilities. He ordered that the partially constructed lounge and auxiliary hangar be removed within ninety days and that further enlargement of the facilities cease. On review, the Court of Appeals affirmed the order.

On May 22, 1972, the defendant Ritter notified the Zoning Board that he was proceeding to convert the partially completed hangar into a two-bedroom dwelling "with an attached garage and hobby-tool shop in the remaining portion."

The plaintiff, after notice and on motion, obtained a citation requiring the defendant to appear and show cause why he should not be attached as for contempt (G.S. 5-8) in failing to comply with Judge Falls' order to remove the partially completed building and to cease further enlargement of the airport facilities.

At the hearing on the show cause order, Judge Ervin held that the plaintiff had not carried the burden of showing the defendant Ritter was in violation of Judge Falls' order and dismissed the proceeding. On review, the Court of Appeals (20 N.C. App. 380, 201 S.E. 2d 534) reversed and remanded the cause for further proceeding. That decision is now before us for review.

The stipulations before Judge Ervin disclosed the defendant's failure to remove the offending structure. The defendant gave notice that he was converting the building into a two-bedroom dwelling with an attached garage and hobby-tool shop in the remaining portion. "Stipulations duly made during the course of a trial constitute judicial admissions binding on the parties and dispensing with the necessity of proof . . . for the duration of the controversy." 7 Strong, N. C. Index 2d, Trial, § 6 Stipulations. *R. R. v. Highway Commission,* 268 N.C. 92, 150 S.E. 2d 70; *Heating Co. v. Construction Co.,* 268 N.C. 23,

149 S.E. 2d 625; *Moore v. Humphrey*, 247 N.C. 423, 101 S.E. 2d 460.

The burden, therefore, was on the defendant Ritter to show compliance in order to purge himself of the contempt citation.

Chief Justice Smith in *Baker v. Cordon*, 86 N.C. 116, states the rule:

"If the act is intentional, and violates the order, the penalty is incurred, whether an indignity to the Court, or contempt of its authority, was or was not the motive for doing it. A party is not at liberty by a strained and narrow construction of the words, and a disregard of the obvious and essential requirements of the order, to evade the responsibility which attaches to his conduct. In an honest desire to know the meaning and to conform to its directions, a mistaken interpretation of doubtful language would be a defense to the charge, but when its language is plain and the attempt is made to escape the force and defeat the manifest purposes of the order, by indirection, the penalty must be enforced, or the Court would be unable to perform many of its most important functions."

In *Rose's Stores v. Tarrytown Center*, 270 N.C. 206, 154 S.E. 2d 313, this Court, quoting *Cotton Mills v. Abrams*, 231 N.C. 431, 57 S.E. 2d 803, held: " 'The question is not whether the respondent intended to show his contempt for the court, but whether he intentionally did the acts which were a contempt of the court.' . . . 'If the act is intentional, and violates the order, the penalty is incurred, whether an indignity to the Court or a contempt of its authority, was or was not the motive for it.' . . . The respondents having sought to purge themselves, the burden was on them to establish facts sufficient for that purpose."

We conclude that Judge Ervin, having dismissed Judge Anglin's order to show cause, committed error of law by placing the burden on the movant, the City of Brevard. The burden was on the defendant, Mr. Ritter, to purge himself of the charge of contempt by showing that he had complied with the court's mandate that he remove the offending structure. At the hearing, Judge Ervin did not require the defendant to show anything, but held the City had failed to carry its burden. Judge Ervin's order was based on a mistaken view of the law. His decision was, therefore, erroneous.

City of Brevard v. Ritter

The Court of Appeals was correct in reversing the order and in remanding for further proceedings. The superior court will proceed to conduct a hearing on the questions raised by Judge Anglin's show cause order and otherwise make a final disposition of the controversy.

The decision of the Court of Appeals is

Affirmed.

Justice SHARP concurring in result:

I am in complete accord with the majority's decision that Judge Ervin erred in placing the burden of proof upon plaintiffs to show that defendant Ritter is in violation of Judge Falls' order and that the cause must be remanded to the Superior Court. Judge Falls' order of 23 February 1972 directed defendant "to remove that portion of construction of said pilot lounge or club and auxiliary hangar already completed within 90 days from the date of this judgment." The stipulations establish that, without removing any portion of the structure as it existed on 23 February 1972 and without obtaining any modification of the court's order, defendant made certain alterations within the existing walls and roof by building two bedrooms, a kitchen, garage, hobby-tool shop, and changing the bathrooms. The stipulations, therefore, establish defendant's violation of the order and his contumacy. No further hearing is necessary to determine that fact; the only question remaining for the court is what punishment should be imposed.

The majority opinion, as I interpret it, *requires* the demolition of the altered structure. It is my view that, if appropriate, alternative sanctions may be imposed, and, in determining what penalty should be imposed for defendant's contempt, the court may take into consideration whether the present building is in violation of the zoning ordinance and, if so, to what extent. Any portion of the structure which does not conform must, of course, be removed. The vindication of judicial authority, however, does not necessarily require the wasteful demolition of a building which could legally be reconstructed immediately after it has been razed. Such an order would seem to confuse judicial vindication with judicial vindictiveness.

Chief Justice BOBBITT and Justice BRANCH join in this concurring opinion.